UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMERICAN FAMILY CONNECT PROPERTY AND CASUALTY INSURANCE COMPANY,

Plaintiff,

v.

TERESA PEQUIGNOT, ET AL.,

Defendants.

CASE NO. 2:23-cv-00133-JHC

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT (DKT. # 29)

# I

# INTRODUCTION

This insurance matter comes before the Court on Plaintiff American Family Connect Property and Casualty Insurance Company's Motion for Summary Judgment. *See* Dkt. # 29. The Overvolds sued their neighbors the Pequignots, the insureds and defendants here, in superior court. In the underlying lawsuit, the Overvolds seek a declaratory judgment with respect to alleged easements and assert causes of action for quiet title, intentional infliction of emotional distress, and abuse of process. The Pequignots tendered the claim to their home insurance carrier, American Family, the plaintiff here. American Family contends that it does not owe a duty to defend or a duty to indemnify the Pequignots. The Court agrees. Because the underlying

lawsuit does not involve an "occurrence" within the meaning the home insurance policy at issue, the Court GRANTS American Family's motion.

## II
## BACKGROUND

This home insurance coverage dispute arises out of a lawsuit filed by Matthew Overvold and Angela Overvold against Teresa Pequignot and Donald Pequignot in Snohomish County Superior Court: *Matthew Overvold and Matthew and Angela Overvold v. Donald and Teresa Pequignot*, Case No. 20-2-0459-31 (the Underlying Lawsuit). Between August 6, 2020, and August 6, 2021, the Pequignots had a home insurance policy (the Policy) [1] with American Family. American Family seeks a declaratory judgment that it does not owe a duty to defend or a duty to indemnify the Pequignots in the Underlying Lawsuit. Dkt. # 1 at 13–14.[2]

According to the complaint in the Underlying Lawsuit:

On December 28, 2015, Matthew Overvold acquired title, via quitclaim deed, to real property located at 10721 37th St. SE, Lake Stevens, WA 98258. Dkt. # 30-1 at 3. Since acquisition, Matthew Overvold has resided at the property with his wife, Angela Overvold, and their children. *Id.* In the deed, Matthew Overvold acquired two easements for roadway and utility purposes, including ingress and egress from the property. *Id.* The ingress and egress use of the property "has also included a strip of land adjacent to the deeded easement." *Id.* at 4. Since moving to the property, the Overvolds claim that they "have attempted to clear flora (within the easement) that was encroaching on the paved portion of the easement" and that the neighboring Pequignots "have actively sought to prevent [them] from doing" so through "making

[1] Policy Number HI02977239. *See* Dkt. # 30-3.

[2] The Overvolds are also named Defendants here, but an order of default has been entered against them. *See* Dkt. # 21. Whenever this order refers to Defendants, it is referring to the Pequignots, unless otherwise stated.

reports to police and local fire departments," engaging in conduct seeking to "intimidate and bully" the Overvolds and their visitors, and "seeking a petition for antiharassment protection order" in Snohomish Superior Court. *Id.*

The Overvolds also allege that since December 2015, the Pequignots have been "caustic and rude" and interfered with their rights associated with the easements: "physically standing in the way of [the Overvolds] and [their] guests' vehicles as they attempt to go to and from their residence, including banging a fist on the hood of the vehicle attempting to pass through; intimidating [their] guests and family members to extent that they do not feel safe using the easement to approach their home[.]" *Id.* The Overvolds say that they "continue to suffer, anxiety, stress, and emotional distress whenever the need to use the easement for ingress and egress arises, so much so that they have been compelled to relocate their family elsewhere." *Id.* at 5. The Overvolds purport to state four causes of action in the Underlying Lawsuit: (1) a declaratory judgment for the parties' rights, entitlements, and obligations relating to the easement for ingress and egress; (2) a claim to quiet title, seeking to expand the existing ingress and egress easement, through the theory of prescriptive easement, to include additional portion of land actually used for ingress and egress to the Overvold residence; (3) intentional infliction of emotional distress (IIED); and (4) abuse of process. *Id.* at 5–7. The IIED and abuse of process claims request damages in an amount to be proven at trial and the Overvolds seek attorney fees and costs as allowed by contract, statute, or in equity. *Id.* at 8.

American Family has defended the Pequignots in the Underlying Lawsuit while reserving "all rights, including but not limited to, the right to deny coverage the subject Policy" and its "indemnity obligation[.]" Dkt. # 30-2 at 2. The Policy states in pertinent part:

> **We** will pay all sums arising out of any one **occurrence** which an **insured person** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** covered by this policy. If a claim is made or suit is brought against the

> **insured person** for liability under this coverage, **we** will defend the **insured person** at **our** expense, using lawyers of **our** choice. **We** may investigate and settle any claim or suit as **we** think appropriate. **Our** duty to settle or defend ends when **our** limit of payment for this coverage has been exhausted by payment of judgements or settlements.

Dkt. # 30-3 at 20. The Policy contains this definition:

> **Occurrence** means an accident which is unexpected or unintended from **your** standpoint resulting in **bodily injury** or **property damage** during the policy period. It also includes repeated or continuous exposure to substantially the same general harmful conditions.

*Id.* at 13. American Family now moves for summary judgment, contending that it does not owe a duty to defend or a duty to indemnify the Pequignots. *See* Dkt. # 29.

## III
## DISCUSSION

### A. Legal Standards

Summary judgment is warranted if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make an adequate showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); Fed. R. Civ. P. 56(e). Underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587.

Under Washington law, interpretation of an insurance policy is a question of law. *Overton v. Consolidated Ins. Co.*, 145 Wash.2d 417, 424, 38 P.3d 322 (2002). Summary

judgment is appropriate when "the interpretation of language in an insurance policy is a matter of law." *Allstate Inc. Co. v. Peasley*, 131 Wash.2d 420, 423-24, 932 P.2d 1244 (1997).

Courts interpreting an insurance policy will give the language its plain meaning, construing the policy as would an "average" person purchasing insurance. *Woo v. Fireman's Fund Ins. Co.*, 161 Wash.2d 43, 52, 164 P.3d 454 (2007). An ambiguity in the policy is interpreted in favor of the insured. *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wash.2d 398, 411, 229 P.3d 693 (2010). A clause in an insurance policy is ambiguous if it is "fairly susceptible to two different interpretations, both of which are reasonable." *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wash.2d 165, 171, 110 P.3d 733 (2005).

Under Washington law, the duty to defend is broader than the duty to indemnify. *Woo*, 161 Wash.2d at 52. An insurance company has the duty to indemnify if the insurance policy *actually* covers the claims against the insured, while the duty to defend arises if the insurance policy *conceivably* covers the insured's liability. *Am. Best Food*, 168 Wash.2d at 404. An insurer is relieved of the duty to defend only if the policy clearly does not cover the claim. *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wash.2d 751, 760, 58 P.3d 276 (2002).

The duty to defend is generally determined from the "eight corners" of the insurance contract and the underlying complaint. *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wash.2d 793, 803, 329 P.3d 59 (2014) *as corrected* (Aug. 6, 2014). In determining whether there is a duty to defend, the question is whether "there is any reasonable interpretation of the facts or the law that could result in coverage." *Am. Best Food*, 168 Wash.2d at 405. Extrinsic evidence cannot be the basis for the denial of coverage. *Expedia*, 180 Wash.2d at 804.

There are two steps to determining whether coverage exists: First, "[t]he insured must show the loss falls within the scope of the policy insured losses." *McDonald v. State Farm Fire and Cas. Co.*, 119 Wash.2d 724, 731, 837 P.2d 1000 (1992). Then, "[t]o avoid coverage, the

insurer must . . . show the loss is excluded by specific policy language." *Id.* As discussed below, here, the Pequignots do not get past the first step.

B. The Underlying Lawsuit Does Not Involve an "Occurrence"

According to American Family, its duties to the insured are limited to damages that arise out of an "occurrence." *See* Dkt. # 29. The Policy defines "occurrence" as "an accident which is unexpected or unintended from your standpoint resulting in bodily injury or properly damage during the policy period. It also includes repeated or continuous exposure to substantially the same general harmful conditions."[3] Dkt. # 30-3 at 13. American Family states that "an accident is never present when the insured performs a deliberate act." Dkt. # 29 at 15 (citing *Allstate Ins. Co. v. Bauer*, 96 Wash. App. 11, 15, 977 P.2d 617 (1999)).

When, as in this case, an insurance policy does not define "accident," courts look to the "common sense definition" of the term. *See IDS Prop. Cas. Ins. Co. v. Ivanov*, No. C18-1161-JCC, 2019 WL 2646112, at *4 (W.D. Wash. June 27, 2019) (citing *Roller v. Stonewall Ins. Co.*, 115 Wash.2d 679, 684–85, 801 P.2d 207 (1990), *overruled on other grounds by Butzberger v. Foster*, 151 Wash.2d 396, 402, 89 P.3d 689 (2004)). In insurance coverage disputes, Washington courts define an "accident" as "an unusual, unexpected, and unforeseen happening." *Grange Ins. Co. v. Brosseau*, 113 Wash.2d 91, 95, 776 P.2d 123 (1989) (citing *Tieton v. General Ins. Co. of Am.*, 61 Wash.2d 716, 721–22, 380 P.2d 127 (1963)). "An accident is never present when the insured performs a deliberate act unless some additional, unexpected, independent and

[3] The Pequignots say that the second sentence in this definition somehow renders ambiguous the definition of "occurrence." Dkt. # 31 at 4. But "the contract as a whole must be read as the average person would read it; it should be given a practical and reasonable rather than a literal interpretation, and not a strained or forced construction leading to absurd results." *Moeller v. Farmers Ins. Co. of Washington*, 173 Wash. 2d 264, 272, 267 P.3d 998 (2011) (internal quotations and citations omitted). It appears clear to the Court that the second sentence refers to "substantially the same general harmful conditions" presented by an "accident," which is referred to in the first sentence. The Pequignots do not present a reasonable alternative interpretation.

unforeseen happening occurs which produces the damage." *W. Nat. Assur. Co. v. Hecker*, 43 Wash. App. 816, 822, 719 P.2d 954 (1986).

Here, the Underlying Lawsuit alleges that the Pequignots "actively sought to prevent" the Overvolds from clearing flora "that was encroaching on the paved portion of the easement[,]" by

> (1) making reports to police and local fire departments,
>
> (2) physically standing in the way of the Overvolds and their guests when they attempted to drive to and from the residence, including banging a fist on the hood of a vehicle passing through;
>
> (3) intimidating the Overvolds and seeking to restrain them from their lawful use of their property; and
>
> (4) seeking a petition for antiharassment protection order against the Overvolds in state court.

Dkt. # 30-1 at 4, 6–7. The Underlying Lawsuit alleges deliberate acts by the Pequignots.[4] Accordingly, the Court concludes that the Underlying Lawsuit clearly does not involve an "occurrence" under the terms of the Policy and the Policy neither conceivably nor actually covers the Overvolds' allegations. Given this conclusion, the Court need not reach the other issues raised by American Family.

## IV
## CONCLUSION

Given the foregoing, the Court GRANTS American Family's motion for summary judgment (Dkt. # 29). American Family has no duty to defend or indemnify the Pequignots for

---

[4] Further, the Overvolds do not allege that any "additional, unexpected, independent and unforeseen happening[s]" occurred because of the Pequignots' deliberate acts, which could render a deliberate act an "accident," *Hecker*, 43 Wash. App. at 822, nor do the Pequignots allege as much. *See* Dkt. ## 31, 31-1, 31-2 (absence).

the claims asserted against them in the Underlying Lawsuit, *Matthew Overvold and Matthew and Angela Overvold v. Donald and Teresa Pequignot*, Snohomish County Superior Court Case No. 20-2-0459-31.

Dated this 2nd day of April, 2024.

John H. Chun
United States District Judge